UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SARA FELLIG,

                    Plaintiff,

    — against —

MARK J.F. SCHROEDER, in his official capacity
as Commissioner of the New York State Department
of Motor Vehicles; JANE DOE #1, in her individual
capacity; and JANE DOE #2, in her individual
capacity,

                  Defendants.

Civil Action No. 26-2488

**COMPLAINT AND
JURY DEMAND**

Plaintiff Sara Fellig, by and through her attorneys, Lerner Freeman Law PLLC, for her Complaint alleges as follows:

### **INTRODUCTION**

1.      Plaintiff Sara Fellig, like many ultra-Orthodox Jewish women, always covers her hair in public with a wig, scarf, or hat pursuant to Jewish law.

2.      On November 13, 2025, employees at the Atlantic Avenue Brooklyn Department of Motor Vehicles ("DMV") forced Ms. Fellig to remove her religious head covering for a driver's license photograph—contrary to New York state regulations, the DMV's own policies, and federal and state law.

3.      The DMV employees did this even though Ms. Fellig repeatedly explained that her sincerely-held religious beliefs required her to keep her head covering on.

4.      They did this even though the state regulation governing driver's license photographs explicitly permits applicants to wear head coverings—like Ms. Fellig's—that do not obscure the face.

5.      And they did this even though their conduct violated Ms. Fellig's First Amendment right to religious free exercise and her right to be free from discrimination in a place of public accommodation like the DMV.

6.      Manifestly wrong on its face, the Defendants' treatment of Ms. Fellig was particularly disturbing given that "[r]ecent years have seen a rise in antisemitism globally and within NYC, particularly following the October 7, 2023 attacks on Israel,"[1] and that fifty-eight percent of all alleged hate crimes in New York City in 2025 were committed against Jewish people.[2]

7.      Ms. Fellig seeks damages for the severe emotional distress, trauma, and deprivation of her constitutional rights caused by the Defendants' unlawful conduct.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action arises under the First and Fourteenth Amendments to the United States Constitution and New York state law.

9.      This Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims occurred in this District.

**PARTIES**

11.     Plaintiff SARA FELLIG is a resident of Brooklyn, New York.

12.     Defendant MARK J.F. SCHROEDER is the Commissioner of the New York State DMV. He is sued in his official capacity. Schroeder is responsible for the policies,

---

[1] Mayor's Office to Combat Antisemitism, 2025 Report, *available at* https://www.nyc.gov/content/dam/nycgov/mayors-office/downloads/pdf/press-releases/2025/MOCA-Report-2025.pdf.

[2] New York City Police Department, Hate Crime Reports, Complaint Statistics by Bias Motivation, Annual 2025, *available at* https://www.nyc.gov/site/nypd/stats/reports-analysis/hate-crimes.page.

practices, and customs of the New York State DMV and for the training and supervision of DMV employees.

13. Defendant JANE DOE #1, whose identity is currently unknown to Plaintiff, was at all relevant times an employee, agent, or contractor of the New York State DMV acting under color of state law. She is sued in her individual capacity.

14. Defendant JANE DOE #2, whose identity is currently unknown to Plaintiff, was at all relevant times an employee, agent, or contractor of the New York State DMV acting under color of state law. She is sued in her individual capacity.

## FACTUAL ALLEGATIONS

15. Ms. Fellig lives in an apartment in Crown Heights with her husband and her three daughters, all of whom are under four years old. A former special education teacher, Ms. Fellig now works as an administrative store clerk at the Brooklyn ice-cream shop Sweet Expressions and provides childcare for her family.

16. Ms. Fellig was raised since birth in the ultra-Orthodox Hasidic Jewish tradition and attended Beth Rivka, a Jewish religious school, as a child.

17. She is currently part of the Lubavitch community, which is a global Orthodox Hasidic movement.

18. According to Biblical narratives, Talmudic law, and Hasidic tradition, Orthodox Jewish women must cover their hair in public once they are married, with no exceptions at all. They must also cover their hair in the presence of other people, except their spouse—even close friends and family members—with very limited exceptions.

19. This requirement flows from provisions of Jewish law that once a woman is married, her hair becomes sacred and must then be covered.

20. And according to Kabbalah, a mystical branch of Judaism, a married woman receives blessings when she covers her hair properly.

3

21. Because of these commandments, Ms. Fellig began to use head coverings in public immediately after her marriage and has do ne so ever since.

22. Within different Orthodox sects and communities, women cover their hair in different ways. Some use wigs exclusively. Others wear only kerchiefs and are forbidden from wearing wigs because they resemble real hair. Others still wear wigs with another item on top.

23. Ms. Fellig covers her hair in an array of ways depending on the situation. She wears either a full wig, a headscarf, or a combination item consisting of a beanie-style hat on top of a partial wig, designed to be worn in tandem.

24. All of those different head coverings fulfill the requirements of Orthodox Judaism because they fully cover Ms. Fellig's hair.

25. Forcing Ms. Fellig—or any married, ultra-Orthodox Jewish woman who wears a head covering—to remove that head covering in public is akin to forcing a secular person to strip naked in front of strangers, carrying all the same shame, humiliation, and abasement.

26. In short, Ms. Fellig's head covering is central to her religious faith and an essential part of her personal identity.

27. Ms. Fellig has *always* worn a head covering in public since her marriage, even in the face of vicious antisemitic incidents in her New York neighborhood.

28. Once, in 2020, Ms. Fellig was walking down Empire Boulevard when she passed someone who looked at her and said: "Fucking Jew."

29. Several years later, in 2023, Ms. Fellig was walking down Empire with her infant in the stroller when someone said to her, "The Nazis should have finished their job, you fucking Jewish bitch."

30. Neither of these profoundly hateful comments cowed Ms. Fellig, who believes strongly in her religious rights and is proud of her Jewish identity, faith, and heritage.

*The DMV Forces Ms. Fellig to Remove Her Religious Head Covering for a Photograph*

31.    Ms. Fellig had a 9:45 a.m. appointment at the Atlantic Avenue Brooklyn DMV on Thursday, November 13, 2025 to obtain a New York State driver's license.

32.    The morning of the appointment was chaotic: Two of Ms. Fellig's three daughters were ill and her husband could not assist with childcare.

33.    Because appointments with the DMV can be difficult to obtain timely, Ms. Fellig did not want to cancel her existing slot, so she resolved to make it work.

34.    After her husband dropped their feverish eldest daughter off with his mother and Ms. Fellig took their middle daughter to school, Ms. Fellig and her infant daughter traveled from Crown Heights to the Atlantic Center Mall.

35.    Ms. Fellig brought all the required forms—including her social security card, birth certificate, and passport—to ensure she was prepared for her appointment and wouldn't be forced to reschedule.

36.    That day, Ms. Fellig's head covering was a combination item consisting of a beanie-style hat designed to be worn over a partial wig.

37.    Both pieces of this particular head covering must be worn simultaneously in order for Ms. Fellig to satisfy her religious obligations and practices.

38.    If the hat is not worn, Ms. Fellig's hair is visible through a piece of netting on top of the partial wig, and her hairline is visible at the front of the partial wig.

39.    If the partial wig is not worn, Ms. Fellig's hair is visible beneath the cuff of the hat.

40.    For this reason, if Ms. Fellig wore only the hat or only the partial wig while out in public, she would experience the same level of distress and trauma as if she were wearing neither piece.

41.    After Ms. Fellig was called to a service desk—Counter 16—at the DMV, Jane Doe #1—the DMV desk employee—told Ms. Fellig she could not wear her hat during the driver's license photograph.

42.    Ms. Fellig told Jane Doe #1 that she needed to wear her hat. When Jane Doe #1 asked if Ms. Fellig wore the hat for religious purposes, Ms. Fellig said: "Yes, I do."

43.    Jane Doe #1 nevertheless declared: "Well, you still can't wear your hat."

44.    Before Ms. Fellig could respond further, a different DMV employee who appeared to be a supervisor—Jane Doe #2—approached the initial desk employee, and the two women began to speak together.

45.    Ms. Fellig thought they must be discussing a way to help resolve her issue, and that Jane Doe #2 would instruct Jane Doe #1 to permit Ms. Fellig to wear her religious hat for the photograph.

46.    But that's not what happened. When Ms. Fellig asked if Jane Doe #2 would allow her to wear the hat, Jane Doe #1 said no, again demanding that Ms. Fellig remove her hat.

47.    Ms. Fellig's head covering did not obscure any part of her face. Despite this, she offered to push its edges back slightly to ensure that every bit of her forehead was visible for the photograph.

48.    Jane Doe #1 still insisted that Ms. Fellig remove her hat.

49.    Neither Jane Doe #1 nor Jane Doe #2 explained why Ms. Fellig had to remove her hat.

50.    Neither Jane Doe #1 nor Jane Doe #2 said that Ms. Fellig's hat obscured her face or would make it difficult to identify her from her driver's license photograph.

51.    Ms. Fellig was distraught. The DMV was crowded, with at least thirty people in line to enter the main service area, and nearly 100 people already filling that room. Ms.

6

Fellig had her infant daughter—who was ill with RSV—with her in a stroller. She could not easily reschedule this essential appointment.

52. Ms. Fellig was so disturbed by the prospect of removing her head covering in public that she contemplated calling her rabbi to discuss the unlawful circumstances she was facing.

53. But, looking at the crowded room, mindful of shifting sentiments against the Jewish community due to the war in Gaza, and nervous because of the hate speech she had endured in the past, Ms. Fellig decided not to make the call, worried that onlookers would believe her to be an angry Jewish person seeking to make trouble.

54. Desperate to complete the appointment and leave, Ms. Fellig took off her hat and stood, uncovered, while the photograph was taken.

55. Counter 16 was in clear view of everyone in the DMV service space. It has no curtain. Every person at the DMV that morning could see Ms. Fellig without her religious head covering.

56. Ms. Fellig put her hat back on as quickly as possible once the photograph was done, then left the DMV feeling violated and overwhelmed.

57. On her way back to Crown Heights, Ms. Fellig called her mother and told her that the DMV had just forced her to remove her religious hat and that she was overcome with guilt from this coerced violation of her faith.

58. When Ms. Fellig picked up her eldest daughter from her mother-in-law's home, she repeated her story, again sharing her distress.

59. Since her new driver's license arrived a few weeks later, Ms. Fellig has feared those moments when she is forced to use it.

60. She has already been forced to use her license on five occasions: first, at a doctor's appointment for her daughter; second, to purchase wine for Shabbat dinner; third, to

enter her grandmother's apartment building; and fourth and fifth—ironically—to twice notarize her Claim against the State of New York in this matter.

61.    The doctor's office even photocopied Ms. Fellig's license photograph for its records, meaning that Ms. Fellig can never know how many times her uncovered hair will be seen by people other than her husband.

62.    Each time someone views the photograph, Ms. Fellig experiences a renewed desecration of her religious beliefs.

63.    To avoid this distress, Ms. Fellig has studiously avoided social scenarios—like meeting her sister-in-law in public to catch up—that might require her to show her license. The DMV's conduct has therefore forced Ms. Fellig into involuntary social isolation. Rather than risk the need to show her license photograph, Ms. Fellig simply stays home.

64.    Ms. Fellig's emotional damages will continue and multiply until a new photograph is taken and a new license issued.

65.    On top of these recurring harms, Ms. Fellig continues to experience anxiety and guilt about being forced to violate her faith in the first place.

66.    And she fears condemnation from her Chabad community—and her rabbi—if they discover that her official New York State ID depicts her without appropriate headgear.

### The DMV's Misconduct Violated Its Own State Regulation, Which Permits Religious Head Coverings to Be Worn in Driver's License Photographs

67.    New York State regulations protect the right of license applicants to wear head coverings of any sort—including hats and wigs—for driver's license photographs, provided

that those head coverings will not "obscure the applicant's face or make identification difficult." 15 NYCRR § 3.8(a).[3]

68.    Ms. Fellig's wig/beanie head covering left her entire face exposed. Ms. Fellig even volunteered to push the covering back slightly to ensure that every bit of her forehead was visible in the photograph. Ms. Fellig's head covering did not obscure any piece of her face.

69.    And since Ms. Fellig—like all ultra-Orthodox married women—always covers her head with a wig, scarf, hat, or combination thereof in public, her head covering posed no threat to accurate identification: A photograph of Ms. Fellig *with* her head covering depicts her exactly as she ordinarily appears in public.

70.    In fact, a photograph of Ms. Fellig *without* her head covering might make identification challenging, since no one but Ms. Fellig's husband ever views her hair.

71.    Nothing in Section 3.8 creates an exception for the sort of head covering that Ms. Fellig wore.

72.    This policy is in keeping with the federal standards governing official government photographs.

73.    For example, the Department of State permits those who wear religious hats or head coverings to keep those coverings on for official passport photographs. The Department of State website states that applicants may wear "hats [and] other head coverings" in passport

---

[3] The regulation provides: "An applicant for any class of driver's license, except a learner permit is required to submit to a photo imaging process as part of the licensing procedure. Such applicant may not wear dark eye glasses, makeup or any apparel which when photographed would obscure the applicant's face or make identification difficult." 15 NYCRR § 3.8(a).

photos "if the applicant can establish that the hat or head covering is worn in connection with a sincerely held religious belief" and "is worn continuously in public."[4]

74.    Similarly, the Department of Homeland Security permits "head coverings for religious" reasons in REAL ID photographs so long as the face is "visible from the hairline to the chin and forward of the ears" and is "free of shadows."[5]

75.    And the United States Citizenship and Immigration Services permits religious head coverings to be worn in photographs. On July 23, 2012, USCIS issued a policy memorandum stating that "USCIS will accommodate an individual who wears headwear as part of their religious practices."[6]

76.    The New York State regulation is also aligned with policies used by nearly all DMVs across the country.[7]

77.    After a DMV in Beacon, New York forced a Muslim woman to remove her hijab for a license photograph, DMV officials sent letters of reminder throughout the state reiterating that religious head coverings may be kept on for such photographs.

78.    Law enforcement officials across the country have recognized the right of citizens to wear religious head coverings during mug shots. The New York Police Department, Yonkers Police Department, and Suffolk County Police Department have all

---

[4] 8 FAM 402.1, "Passport Photographs," *available at* https://fam.state.gov/fam/08fam/08fam040201.html.

[5] Transportation Security Administration, "REAL ID Frequently Asked Questions," *available at* https://www.tsa.gov/realid/realid-faqs.

[6] U.S. Citizenship and Immigration Services, Policy Memorandum, "USCIS Policy for Accommodating Religious Beliefs During Photograph and Fingerprint Capture," July 23, 2012, *available at* https://www.uscis.gov/sites/default/files/document/memos/Accommodating%20Religious%20Beliefs%20PM.pdf.

[7] Council on American-Islamic Relations Research Center, *Religious Accommodation in Driver's License Photographs: A Review of Codes, Policies, and Practices in the 50 States*, *available at* https://ia.eferrit.com/ea/091a865b89be1a03.pdf.

recognized the religious harm of requiring removal of religious head coverings for booking photos and, in response to lawsuits, have enacted policies permitting arrestees to retain religious head coverings for photographs with very limited exceptions.

79.    The same is true of police departments in Dearborn Heights, Michigan; Long Beach, San Bernardino, and Orange County, California; and Hennepin County, Minnesota (the county that includes Minneapolis).

80.    Police departments have recognized the paramount importance of religious freedom even in the face of significant government interests in safety and identification.

81.    Each of these examples reflects a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs.

***Ms. Fellig Timely Filed a Claim Against the State of New York***

82.    Within ninety days after Ms. Fellig's November 13, 2025 DMV appointment, she filed a Claim against the State of New York with the Court of Claims alleging discrimination in a place of public accommodation under the New York State Human Rights Law, N.Y. Exec. Law § 296. *See* Claim No. 145108.

83.    The State's motion to dismiss the Claim is fully briefed and pending before the Honorable David A. Weinstein.

**FIRST CAUSE OF ACTION**
**Free Exercise Clause – 42 U.S.C. § 1983**
**Against Defendants Jane Doe #1 and Jane Doe #2**

84.    Plaintiff repeats and realleges each and every allegation set forth above.

85.    42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

86.    Under the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, Plaintiff has a clearly-established right to freely exercise her religion.

87. By forcing Plaintiff to remove her religious head covering for a driver's license photograph at the Atlantic Avenue Brooklyn DMV on November 13, 2025, Defendants Jane Does #1-2 deprived Plaintiff of her right to freely exercise her religion in contravention of the Free Exercise Clause.

88. At all relevant times, Defendants acted under color of state law.

89. The conduct of Defendants was willful, wanton, and reckless.

90. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff sustained damages, and suffered and continues to suffer mental anguish, humiliation, trauma, embarrassment, and severe emotional and physical distress.

## SECOND CAUSE OF ACTION
### Failure to Intervene – 42 U.S.C. § 1983
### Against Defendant Jane Doe #2

91. Plaintiff repeats and realleges each and every allegation set forth above.

92. On November 13, 2025, Defendant Jane Doe #2 was aware that Defendant Jane Doe #1 had violated Plaintiff's constitutional rights, had a reasonable opportunity to intervene, and chose not to do so in contravention of clearly established law.

93. At all relevant times, Defendant Jane Doe #2 was acting under color of state law.

94. The conduct of Defendant Jane Doe #2 was willful, wanton, and reckless.

95. As a direct and proximate result of Defendant Jane Doe #2's unlawful failure to intervene, Plaintiff sustained damages, and suffered and continues to suffer mental anguish, humiliation, trauma, embarrassment, and severe emotional and physical distress.

## THIRD CAUSE OF ACTION
### Failure to Train – Deliberate Indifference to Constitutional Rights – 42 U.S.C. § 1983
### Against Defendant Schroeder for Prospective Injunctive and Declaratory Relief

96. Plaintiff repeats and realleges each and every allegation set forth above.

97.     As set forth in the First Cause of Action, Defendants Jane Doe #1 and Jane Doe #2 violated Plaintiff's right to freely exercise her religion under the First Amendment to the United States Constitution by forcing her to remove her religious head covering as a condition of obtaining a driver's license photograph.

98.     As Commissioner of the New York State Department of Motor Vehicles, Defendant Schroeder is the final policymaking authority for the DMV and is responsible for the policies, practices, customs, and training of DMV employees statewide, including the employees who staff the Atlantic Avenue Brooklyn DMV office.

99.     New York State regulations explicitly permit driver's license applicants to wear religious head coverings in license photographs, provided that the covering does not obscure the applicant's face or make identification difficult. *See* 15 NYCRR § 3.8(a). This regulation reflects a clear, established policy that DMV employees are required to follow.

100.     Given the nature of the DMV's core function—photographing members of the public for official government identification—and the substantial diversity of religious practice among New York's population, the need to train DMV employees on the requirements of 15 NYCRR § 3.8(a), including the accommodation of religious head coverings, was and is patently obvious.

101.     The failure to provide such training made it highly probable that DMV employees would improperly require applicants to remove religious head coverings in violation of their First Amendment rights.

102.     Defendant Schroeder had actual notice, well before November 13, 2025, that DMV employees had failed to comply with 15 NYCRR § 3.8(a) and had improperly required license applicants to remove religious head coverings for driver's license photographs. Specifically, in or about 2007, employees at a DMV office in Beacon, New York unlawfully

13

required a Muslim woman to remove her hijab for a driver's license photograph—the same constitutional violation that Plaintiff suffered nearly two decades later.

103. In response to the Beacon incident, the DMV issued reminder letters to offices statewide reiterating that religious head coverings may be retained for license photographs.

104. Despite actual notice from the Beacon incident—and despite statewide reminder letters acknowledging that existing training was insufficient to ensure compliance with 15 NYCRR § 3.8(a)—Defendant Schroeder failed to institute adequate, systematic training protocols, supervisory procedures, or compliance mechanisms sufficient to ensure that DMV employees would not repeat the same constitutional violation.

105. The conduct of Jane Doe #1 and Jane Doe #2 reflects the absence of meaningful training on 15 NYCRR § 3.8(a). Even though Ms. Fellig explicitly invoked her religious beliefs and offered to adjust her head covering to ensure her full face was visible, both employees refused to allow her to retain her head covering.

106. Defendant Schroeder's failure to implement adequate training on 15 NYCRR § 3.8(a) constituted deliberate indifference to the First Amendment rights of New Yorkers who come to the DMV to obtain driver's licenses.

107. The inadequacy of Defendant Schroeder's training policies was the direct and proximate cause of the constitutional violation Plaintiff suffered. Had Defendant Schroeder implemented adequate training protocols following the 2007 Beacon incident—or at any time in the nearly two decades thereafter—DMV employees would have known that they were required to permit Ms. Fellig to wear her religious head covering for her driver's license photograph, and the violation of her First Amendment rights would not have occurred.

108. Absent injunctive relief, the same inadequate training policies will predictably cause future DMV employees to commit the same constitutional violation against other license applicants who wear religious head coverings.

109.    Plaintiff seeks prospective injunctive relief directing Defendant Schroeder, in his official capacity as Commissioner of the New York State Department of Motor Vehicles, to implement adequate training protocols for DMV employees on the requirements of 15 NYCRR § 3.8(a), including without limitation: (i) mandatory training for all customer-facing DMV employees on the right of license applicants to wear religious head coverings for driver's license photographs; (ii) clear written policies on religious accommodation requests, posted at DMV service counters statewide; (iii) supervisory review procedures to be followed whenever an employee seeks to require an applicant to remove a head covering; and (iv) periodic compliance monitoring and reporting. No claim for compensatory or punitive damages is asserted against Defendant Schroeder.

**FOURTH CAUSE OF ACTION**
**New York State Constitution, Article I, Section 3**
**Against Defendants Jane Doe #1 and Jane Doe #2**

110.    Plaintiff repeats and realleges each and every allegation set forth above.

111.    Article I, Section 3 of the Constitution of the State of New York provides that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind." McKinney's Const. Art. 1, § 3.

112.    Defendants violated Article I, Section 3 by disallowing the free exercise of religion when they forced Plaintiff to remove her religious head covering for a driver's license photograph.

113.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained damages, and suffered and continues to suffer mental anguish, humiliation, trauma, embarrassment, and severe emotional and physical distress.

## FIFTH CAUSE OF ACTION
### New York City Human Rights Law
### (N.Y.C. Admin. Code § 8-107)
### Against Defendants Jane Doe #1 and Jane Doe #2

114.    Plaintiff repeats and realleges each and every allegation set forth above.

115.    The New York City Human Rights Law ("NYCHRL") makes it an unlawful discriminatory practice for "any person who is the owner, proprietor, manager, agent or employee of any place or provider of public accommodation" to "refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" because of, among other protected characteristics, creed. N.Y.C. Admin. Code § 8-107(4)(a).

116.    Plaintiff, an ultra-Orthodox Jewish woman, is a member of a protected class.

117.    The Atlantic Avenue Brooklyn DMV office is a "place or provider of public accommodation" within the meaning of the NYCHRL. The NYCHRL defines that term to include providers "whether licensed or unlicensed" of goods and services to the public. N.Y.C. Admin. Code § 8-102(9).

118.    Defendant Jane Doe #1, a DMV desk employee who forced Plaintiff to remove her religious head covering on November 13, 2025, is an "agent or employee" of a place of public accommodation within the meaning of § 8-107(4)(a).

119.    Defendant Jane Doe #2, a DMV supervisor who forced Plaintiff to remove her religious head covering on November 13, 2025, is a "manager, agent or employee" of a place of public accommodation within the meaning of § 8-107(4)(a).

120.    By forcing Plaintiff to remove her religious head covering as a condition of obtaining a driver's license photograph, Defendants denied Plaintiff the "full and equal enjoyment" of the DMV's core service on the same terms and conditions available to all other license applicants.

121.    Defendants required Plaintiff to remove her religious head covering "because of" her creed—Judaism—and because she wears a religious head covering pursuant to her sincerely-held religious beliefs. *See* N.Y.C. Admin. Code § 8-107(4)(a).

122.    Defendants treated Plaintiff less well than other license applicants "because of" her creed—Judaism—when they forced her to remove her religious head covering for a driver's license photograph.

123.    As a direct and proximate result of the Defendants' discrimination against her in a place of public accommodation, Plaintiff sustained damages, and suffered and continues to suffer mental anguish, humiliation, trauma, embarrassment, and severe emotional and physical distress.

**SIXTH CAUSE OF ACTION**
**Negligent Supervision Under New York State Law**
**Against Defendant Jane Doe #2**

124.    Plaintiff repeats and realleges each and every allegation set forth above.

125.    Employers are liable for negligent supervision where the employer knew, or should have known, of employees' propensity for the conduct that caused a plaintiff's injury.

126.    Defendant Jane Doe #2, as a supervisory employee at the Atlantic Avenue Brooklyn DMV, is responsible for the supervision and oversight of the desk employees under her supervision, including Defendant Jane Doe #1.

127.    New York State regulations permit driver's license applicants to wear head coverings in license photographs, provided that the covering does not obscure the applicant's face or otherwise impede accurate identification. *See* 15 NYCRR § 3.8(a). This regulation reflects a clear, established policy that DMV employees are required to follow.

128.    Jane Doe #2 knew or should have known that DMV employees had previously failed to comply with this regulation and had improperly required license applicants to remove religious head coverings for driver's license photographs.

129.    Jane Doe #2 knew or should have known that supervision of DMV desk employees was necessary to prevent them from forcing license applicants to remove religious head coverings for driver's license photographs in contravention of 15 NYCRR § 3.8(a) and federal and state law.

130.    Defendant Jane Doe #2 failed to adequately supervise Defendant Jane Doe #1 and, upon learning about the situation at Counter 16 on November 13, 2025, failed to correct Defendant Jane Doe #1's unlawful demand that Plaintiff remove her religious head covering for her driver's license photograph.

131.    The failures of Defendant Jane Doe #2 to adequately supervise Defendant Jane Doe #1 directly and proximately caused Plaintiff's injuries. Had Defendant Jane Doe #2 properly supervised Defendant Jane Doe #1, Plaintiff would not have been required to remove her religious head covering and would not have suffered the injuries described herein.

132.    As a direct and proximate result of Jane Doe #2's failure to supervise Jane Doe #1 with respect to the implementation of 15 NYCRR § 3.8(a), Plaintiff sustained damages and suffered and continues to suffer mental anguish, humiliation, trauma, embarrassment, and severe emotional and physical distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sara Fellig respectfully requests that this Court enter a judgment in her favor and against the Defendants Jane Doe #1 and Jane Doe #2, jointly and severally, for compensatory damages, and against Defendant Schroeder for the prospective injunctive and declaratory relief described herein:

a. Compensatory damages in an amount to be determined at trial;

b. Declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02;

18

c. Injunctive relief directing Defendant Schroeder to (i) provide Plaintiff with a free retake of her driver's license photograph with her religious head covering in place; (ii) issue a replacement license bearing that photograph, at no cost to Plaintiff and without requiring submission of Form MV-44 or payment of any fee; (iii) destroy the existing photograph as it appears in any and all DMV records and federal databases to which the DMV may have transmitted the photograph; and (iv) implement the mandatory training policies and practices set forth in the Third Cause of Action;

d. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and N.Y.C. Admin. Code § 8-502(g);

e. Pre-judgment and post-judgment interest as allowed by law; and

f. Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
April 27, 2026

**LERNER FF        AW PLLC**

By: _____

Emma Lerner Freeman
147 Prince Street, 4th Fl.
Brooklyn,  NY 11201
(413) 221-9033

*Counsel for Plaintiff Sara Fellig*